CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Amanda Seabock, Esq., SBN 289900
Zachary Best, Esq., SBN 166035
Mail: 8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
amandas@potterhandy.com
        Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Brian Whitaker**<br><br>Plaintiff,<br><br>**v.**<br><br>**Fortuna Enterprises, L.P.**, a Delaware Limited Parnership;<br><br>Defendants, | **Case No**. 2:20-cv-10314-SB-AFM<br><br>**First Amended Complaint For Damages And Injunctive Relief For Violations Of:** Americans With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Brian Whitaker complains of Fortuna Enterprises, L.P. ("Defendants"), and alleges as follows:

**PARTIES:**

1.  Plaintiff is a California resident with physical disabilities. He is substantially limited in his ability to walk. He suffers from a C-4 spinal cord injury. He is a quadriplegic. He uses a wheelchair for mobility.

2.  Defendants own and operated the Hilton Lax Hotel located at 5711 W. Century Blvd., Los Angeles, California currently and at all times relevant to

1   this complaint.

2   3.   Plaintiff does not know the true names of Defendants, their business

3   capacities, their ownership connection to the property and business, or their

4   relative responsibilities in causing the access violations herein complained of,

5   and alleges a joint venture and common enterprise by all such Defendants.

6   Plaintiff is informed and believes that each of the Defendants herein,

7   including Does 1 through 10, inclusive, is responsible in some capacity for the

8   events herein alleged, or is a necessary party for obtaining appropriate relief.

9   Plaintiff will seek leave to amend when the true names, capacities,

10   connections, and responsibilities of the Defendants and Does 1 through 10,

11   inclusive, are ascertained.

12

13   **JURISDICTION:**

14   4.   The Court has subject matter jurisdiction over the action pursuant to 28

15   U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with

16   Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

17   5.   Pursuant to supplemental jurisdiction, an attendant and related cause

18   of action, arising from the same nucleus of operative facts and arising out of

19   the same transactions, is also brought under California's Unruh Civil Rights

20   Act, which act expressly incorporates the Americans with Disabilities Act.

21   6.   Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is

22   founded on the fact that the real property which is the subject of this action is

23   located in this district and that Plaintiff's cause of action arose in this district.

24

25   **PRELIMINARY STATEMENT**

26   7.   This is a lawsuit challenging the reservation policies and practices of a

27   place of lodging. Plaintiff does not know if any physical or architectural

28   barriers exist at the hotel and, therefore, is not claiming that that the hotel has

violated any construction-related accessibility standard. Instead, this is about the lack of information provided on the hotel's reservation website that would permit plaintiff to determine if there are rooms that would work for him.

8. After decades of research and findings, Congress found that there was a "serious and pervasive social problem" in America: the "discriminatory effects" of communication barriers to persons with disability. The data was clear and embarrassing. Persons with disabilities were unable to "fully participate in all aspects of society," occupying "an inferior status in our society," often for no other reason than businesses, including hotels and motels, failed to provide information to disabled travelers. Thus, Congress decided "to invoke the sweep of congressional authority" and issue a "national mandate for the elimination of discrimination against individuals with disabilities," and to finally ensure that persons with disabilities have "equality of opportunity, full participation, independent living" and self-sufficiency.

9. As part of that effort, Congress passed detailed and comprehensive regulations about the design of hotels and motels. But, as importantly, Congress recognized that the physical accessibility of a hotel or motel means little if the 61 million adults living in America with disabilities are unable to determine which hotels/motels are accessible and to reserve them. Thus, there is a legal mandate to provide a certain level of information to disabled travelers.

10. But despite the rules and regulations regarding reservation procedures, a 2019 industry article noted that: "the hospitality sector has largely overlooked the importance of promoting accessible features to travelers."

11. These issues are of paramount important. Persons with severe disabilities have modified their own residences to accommodate their unique needs and to ameliorate their physical limitations. But persons with disabilities are never more vulnerable than when leaving their own residences and having

to travel and stay at unknown places of lodging. They must be able to ascertain whether those places work for them.

**FACTUAL ALLEGATIONS:**

12. Due to plaintiff's disability, he is unable to, or seriously challenged in his ability to, stand, ambulate, reach objects mounted at heights above his shoulders, transfer from his chair to other equipment, and maneuver around fixed objects.

13. Thus, Plaintiff needs an accessible guestroom and he needs to be given information about accessible features in hotel rooms so that he can confidently book those rooms and travel independently and safely.

14. Plaintiff planned on taking a staycation in October of 2020. He had tremendous difficulty in finding a hotel that provided enough information about accessibility features that would permit him to independently assess whether the rooms worked for him.

15. Plaintiff felt that the Hilton Lax Hotel would work well for him due to its desirable location price point.

16. Thus, on or about September 11, 2020, plaintiff went to the Hilton Lax Hotel website at https://www.hilton.com/en/hotels/laxahhh-hilton-los-angeles-airport/ seeking to book an accessible room at the hotel.

17. This website reservation site is either maintained and operated by the defendant or is run by a third party on the defendant's behalf. It is the official online reservation system for this hotel.

18. Plaintiff first found that there was no specific information about the accessibility of any part or portion of the hotel other than the individual guestrooms. While many hotels will identify and describe accessible features of the parking, public paths of travel, doors, registration desk and pool, this hotel's reservation website provided no information whatsoever.

19. With few exceptions, the hotel has done nothing more than slap the word "accessible" on all the public areas of the hotel:

**Accessible features**

The following features are available:

- Accessible
- Accessible business center
- Accessible concierge desk
- Accessible elevators
- Accessible exercise facility
- Accessible guest rooms with mobility features with entry or passage doors that provide 32" of clear width
- Accessible hotel restaurant
- Accessible meeting rooms
- Accessible parking
- Accessible parking spaces for cars in the self-parking facility
- Accessible public entrance
- Accessible registration desk
- Accessible route from the accessible public entrance to the accessible guestrooms
- Accessible route from the accessible public entrance to the registration area
- Accessible route from the hotel's accessible public entrance to the meeting room/ballroom area
- Accessible route from the hotel's accessible public entrance to at least one restaurant
- Accessible route from the hotel's accessible public entrance to the business center
- Accessible route from the hotel's accessible public entrance to the exercise facilities
- Accessible route from the hotel's accessible public entrance to the spa
- Accessible route from the hotel's accessible public entrance to the swimming pool
- Accessible swimming pool
- Accessible transportation with advance notice
- Assistive listening devices for meetings upon request
- Bathroom doors at least 32 inches wide
- Bedroom doors at least 32 inches wide (812mm)
- Braille elevator
- Closed captioning on televisions or closed captioning decoders
- Hotel complies with ADA Guidelines
- Hotel complies with the Americans with Disabilities Act of 1990
- Level or ramp entrance into the building
- Public Areas/Facilities accessible for physically challenged
- Rooms accessible to wheelchairs (no steps)
- Service animals welcome
- Strobe alarms
- TTY for guest use
- Visual alarm for hearing impaired
- Visual alarms for hearing impaired in hallways
- Visual alarms for hearing impaired in public areas

5

20. But *every* hotel has a business centers, front desks, elevators, exercise facilities, a public entrance, a restaurant, and public routes around the facility. Here, the hotel simply listed every common public areas of its hotel and attached the adjective "accessible" to it or "complies with the ADA" type language.

21. Claiming something is "accessible" is a conclusion or opinion. Persons with disabilities do not have to rely upon the naked judgment or conclusions of the hotel. The ADA specifically mandates that hotels must provide specific information to persons booking their rooms. Under the ADA, the hotel must not only identify but "*describe* accessible features *in the hotels* and guest rooms offered through its reservations service *in enough detail* to reasonably permit individuals with disabilities to *assess independently* whether a *given* hotel or guest room meets *his or her* accessibility needs." 28 C.F.R. 36.302(e)(1)(ii) (emphasis added to key words). Here, plaintiff has been denied the right.

22. As for the guestroom itself, Plaintiff found that the hotel offered an "1 King Mobility/Hearing Accessible W/Bathtub" guestroom that looked promising.

23. Here, the hotel provided some actual details about the room but simply not enough to permit plaintiff to have any confidence that that the room would work for him.

24. Plaintiff, like any wheelchair user, simply needs to know some basic information (actual data, not adjectives) about the core features so that he can independently assess whether the hotel room works for him. Those core features for the guestroom itself are simply: (1) entrances; (2) maneuvering space at bed; (3) toilet; (4) sink; and (5) bath/shower.  That's it. Five critical areas in the guestroom. Plaintiff does not need an exhaustive list of accessibility features. Plaintiff does not need an accessibility survey to determine of a room works for him. Plaintiff, like the vast majority of

First Amended Complaint                                    2:20-cv-10314-SB-AFM

wheelchair users, simply needs these handful of areas to be described in enough detail to permit him to independently assess that the room works for him and that he can book with confidence.

25. Here, the hotel only provided the following information:



**1 KING MOBILITY/HEARING ACCESSIBLE W/ BATHTUB**

Accessible Bathtub, Hearing Accessible, King Bed

This mobility and hearing accessible guest room features an accessible bathtub, a king-sized Serenity Dreams bed with plush top mattress, and 250 thread-count linens. Accessible features include a visual alarm, and notification devices for the doorbell and incoming telephone calls. Each of our clean and comfortable guest rooms include a standard desk, chair, coffeemaker, iron, and ironing board. Any corresponding photo may not reflect the specific accessible room type.

26. It its general features tab, the hotel stated that the guest room doorways were 32 inches of clear width. This is great. This is precisely the type of information that permits a wheelchair user to make an independent assessment of whether the room works for him.

27. But for the other four core areas: (1) bed, (2) toilet, (3) tub; and (4) sink, the hotel simply does not provide description or details that would permit plaintiff—or any wheelchair user—to make an independent assessment about whether it works for them.

First Amended Complaint                           2:20-cv-10314-SB-AFM

28. For the bed itself, the only thing plaintiff needs to know (and the only thing regulated by the ADA Standards) is whether he can actually get to (and into) the bed, i.e., that there is at least 30 inches width on the side of the bed so his wheelchair can pull up next to the bed for transfer. This is critical information because plaintiff needs to pull his wheelchair alongside the bed. Without this maneuvering clearance, plaintiff is in trouble. Here, the website says nothing about the accessibility of the bed.

29. For the restroom sink, the two things that will determine whether plaintiff can use the sink from his wheelchair: (1) can he safely get his knees under the toilet? To wit: does the sink provide the knee clearance (27 inches high, 30 inches wide, 17 inches deep) and is any plumbing under the sink wrapped with insulation to protect against burning contact? The second thing is whether the lavatory mirror is mounted at a height so that wheelchair users can sue it. A simple statement like: "the lavatory sink provides knee clearance of at least 30 inches wide, 27 inches tall and 17 inches deep, all of the under-sink plumbing is wrapped, and the lowest reflective edge of the mirror is no more than 40 inches high." But here, the hotel reservation website says nothing about the accessibility of the sink. Even the photo (which appear to show unwrapped plumbing) is disclaimed as an actual photo of the room.

30. For the restroom toilet, plaintiff only needs to know two things that determine if he can transfer to and use the toilet; (1) that the toilet seat height is between 17-19 inches (as required by the ADA Standards) and (2) that it has the two required grab bars to facilitate transfer. Here, there is no information about the toilet at all. Due to plaintiff's profound disabilities, transferring from wheelchair to toilet is difficult and dangerous for him. He needs a toilet at the correct height and he needs grab bars.

31. For the bathtub, the plaintiff only needs to know a few things: (1) does it have a tub seat as required by the ADA; (2) does it have the required grab bars

on the walls; (3) does it have a detachable handheld shower spray unit; and (4) are all the amenities within 48 inches height. Here, though, the reservation website says nothing beyond declaring the tub "accessible."

32. Plaintiff (and the vast majority of wheelchair users) only need a small list (5 areas) of items are the bare necessities that they must know to make an independent assessment of whether the "accessible" hotel room works for him. These things comprise the basics of what information is reasonably necessary for plaintiff (or any wheelchair user) to assess independently whether a given hotel or guest room meets his or her accessibility needs.

33. Other accessibility requirements such as slopes of surfaces, whether the hand-held shower wand has a non-positive shut off valve, the required temperature regulator, the tensile strength and rotational design of grab bars, and so many more technical requirements under the ADA are beyond what is a *reasonable* level of detail and plaintiff does not expect or demand that such information is provided.

34. But because the defendant has failed to identify and describe—and/or failed to provide the necessary information to the third party operator of the website reservation system—the core accessibility features in enough detail to reasonably permit plaintiff to *assess independently* whether a given hotel or guest room meets his accessibility needs, the defendant fails to comply with its ADA obligations and the result is that the plaintiff is unable to engage in an online booking of the hotel room with any confidence or knowledge about whether the room will actually work for him due to his disability.

35. This lack of information created difficulty for the plaintiff and the idea of trying to book this room -- essentially ignorant about its accessibility -- caused difficulty and discomfort for the Plaintiff and deterred him from booking a room at the Hilton Lax Hotel.

36. Plaintiff lives in Los Angeles and is, therefore, in easy access to this hotel

9

on a consistent and regular basis.

37. As a veteran ADA tester, Plaintiff is aware that he needs to return to the hotel website and to patronize the hotel in order to have standing to see that the hotel comes into compliance with the ADA's mandate regarding its reservation policies. Thus, plaintiff will use the hotel's website reservation system to book a room and travel to the Hilton Lax Hotel when it has been represented to him that the hotel's website reservation system is accessible. Plaintiff will be discriminated against again, i.e., be denied his lawfully entitled access, unless and until the defendant is complies with the law.

38. Plaintiff would like to patronize this hotel but is deterred from doing so because of the lack of detailed information through the hotel's reservation system.

39. Plaintiff has reason and motivation to use the defendant's hotel reservation and to stay at the defendant's hotel in the future. Among his reasons and motivations are to assess these policies and facilities for compliance with the ADA and to see his lawsuit through to successful conclusion that will redound to the benefit of himself and all other similarly situated as well as the fact that plaintiff finds this hotel to be centrally located to many of the places he intends to visit and close to the airport.

40. Plaintiff routinely revisits and uses the facilities and accommodations of places he has sued to confirm compliance and to enjoy standing to effectuate the relief promised by the ADA.

First Amended Complaint                              2:20-cv-10314-SB-AFM

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

41. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

42. Under the ADA, it is an act of discrimination to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges advantages or accommodations to person with disabilities unless the entity can demonstrate that taking such steps would fundamentally alter the nature of those goods, services, facilities, privileges advantages or accommodations. See 42 U.S.C. § 12182(B)(2)(A)(ii).

43. Specifically, with respect to reservations by places of lodging, a defendant must ensure that its reservation system, including reservations made by "any means," including by third parties, shall:

    a. Ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

    b. Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs; and

    c. Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations

First Amended Complaint            2:20-cv-10314-SB-AFM

1    systems.

2        *See* 28 C.F.R. § 36.302(e).

3    44. Here, the defendant failed to modify its reservation policies and

4    procedures to ensure that it identified and described accessible features in the

5    hotels and guest rooms in enough detail to reasonably permit individuals with

6    disabilities to assess independently whether a given hotel or guest room meets

7    his or her accessibility needs and failed to ensure that individuals with

8    disabilities can make reservations for accessible guest rooms during the same

9    hours and in the same manner as individuals who do not need accessible

10   rooms.

11

12   **II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL**

13   **RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ.

14   Code § 51-53.)

15   45. Plaintiff repleads and incorporates by reference, as if fully set forth

16   again herein, the allegations contained in all prior paragraphs of this

17   complaint.  The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia,

18   that persons with disabilities are entitled to full and equal accommodations,

19   advantages, facilities, privileges, or services in all business establishment of

20   every kind whatsoever within the jurisdiction of the State of California.  Cal.

21   Civ. Code §51(b).

22   46. The Unruh Act provides that a violation of the ADA is a violation of the

23   Unruh Act.  Cal. Civ. Code, § 51(f).

24   47. Defendants' acts and omissions, as herein alleged, have violated the

25   Unruh Act by, inter alia, failing to comply with the ADA with respect to its

26   reservation policies and practices.

27   48. Because the violation of the Unruh Civil Rights Act resulted in difficulty

28   and discomfort for the plaintiff, the defendants are also each responsible for

First Amended Complaint                          2:20-cv-10314-SB-AFM

statutory damages, i.e., a civil penalty. See Civ. Code § 52(a).

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each offense.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code § 52(a).

Dated: January 7, 2021          CENTER FOR DISABILITY ACCESS

By: ___/s/ Russell Handy_____
Russell Handy
Attorney for Plaintiff

13

First Amended Complaint                    2:20-cv-10314-SB-AFM